**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.

**Amianne McMahon,**

      Plaintiff,

v.

**Family Support Center,** *Specialized Autism Services***,**

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Amianne McMahon, by and through undersigned counsel, files this Complaint against Family Support Center, *Specialized Autism Services* (herein "FSC" or Defendant").

## I.    INTRODUCTION

This action arises from the failure of FSC to provide reasonable accommodations to Amianne McMahon during her pregnancy and for several months following her maternity leave. When Ms. McMahon's doctors gave her a 20-pound lifting restriction, FSC forced her to take an unpaid, unnecessary, and unwanted leave of absence during one of the most vulnerable times of her life. Our laws make it very clear that it is illegal to penalize an employee for needing reasonable accommodations, and employers who refuse to follow the law must be held accountable.

## II.     JURISDICTION AND VENUE

1.      Plaintiff alleges violation of rights under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e, *et seq.* and the Americans with Disabilities Act, 42 U.S.C. § 12111, *et. seq.*

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 2000e-5(f)(3), which grant original jurisdiction to the Federal District Court in actions which arise under federal civil rights laws.

3.      Venue is proper pursuant to 28 U.S.C. §1391(b) because Defendant is authorized to do business and does business in the District of Colorado and is therefore subject to personal jurisdiction.

4.      Plaintiff has complied with all jurisdictional, administrative, and legal prerequisites to filing this action, and has received her Notice of Right to Sue from the EEOC.

## III.     ADMINISTRATIVE PREREQUISITES

5.      Ms. McMahon filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant Family Support Center  (Charge No. 541-2019-02982) on or around July 1, 2020 alleging discrimination on the basis of sex/pregnancy discrimination.

6.      The EEOC issued a "Notice of Right to Sue" on September 30, 2020.

7.      This action has been timely commenced within ninety (90) days of Ms. McMahon's receipt of the "Notice of Right to Sue."

8.     Ms. McMahon has complied with all jurisdictional, administrative, and judicial prerequisites prior to filing this action.

## IV.     PARTIES

9.     Ms. McMahon is a resident of and domiciled in the State of Colorado.  She is a hardworking wife and mother.

10.     Defendant is a medical provider that is authorized to do business in Colorado and has four locations around Colorado.  Defendant provides outpatient treatment to children with Autism Spectrum Disorder.

## V.     FACTUAL ALLEGATIONS

11.     Ms. McMahon began employment with FSC on April 11, 2016.

12.     Ms. McMahon worked as a Registered Behavior Technician ("RBT") providing therapy to children ages 18 months to 18 years with diagnosed neurodevelopmental disorders such as Autism.

13.     Ms. McMahon generally provided care to clients in FSC centers.

14.     Patient care was provided in a variety of locations throughout the center. Younger patients typically received care in the downstairs center which contained a kitchen, a work room, a sensory area, an art area, a playroom, a circle time area, an "adolescent room" (with items such as video games), and a gym. The upstairs center was typically used for older clients. This area contained a kitchen, an adolescent room, several work areas, an art/sensory room, a tech room

with computers, and a "creative minds" area with items such as Lego bricks. Therapy was provided in all of these areas and sessions generally required moving throughout the center.

15.     Clients of FSC were generally assigned to a team of around six RBTs and one Board Certified Behavior Analyst ("BCBA"). The teams shared one caseload in order to give clients consistency.

16.     Ms. McMahon was assigned to such a team and worked with clients of varying ages on any given workday.

17.     As an RBT, Ms. McMahon was responsible for providing positive reinforcement for clients when appropriate. For younger clients this could be things such as picking them up to give them a hug or spin them around, show them a video, blow bubbles, or run around the facility. It was important for clients to have various type of positive reinforcement so they did not become too dependent on one type, because in real life some types of reinforcement would not be available.

18.     As an RBT, Ms. McMahon occasionally needed to physically restrain patients for their own safety and the safety of staff.

19.     For both the safety of patients and RBTs, a floor supervisor would step in to assist with a client if necessary. In addition to floor supervisors, other RBTs and BCBAs were also available to provide help. Floor supervisors were frequently on the floor checking in with clients and RBTs, and cleaning, organizing, assisting with scheduling, or working on special projects.

20.     In April 2019, Ms. McMahon found out she was pregnant with twins.

21.     In late May of 2019, she verbally disclosed her pregnancy to Amanda Libby, Clinic Manager.

4

22.     In June 2019, Ms. McMahon's doctor placed her on a twenty-pound lifting restriction.

23.     Because Ms. McMahon was pregnant with twins, her pregnancy was considered "high risk".

24.     On or around June 25, 2019, Ms. McMahon informed Emily Drell, Board Certified Behavior Analyst, of her 20-pound lifting restriction. Ms. Drell informed Ms. McMahon that she should "expect the worst" regarding her request for pregnancy accommodations during the meeting with Human Resources.

25.     On June 26, 2019, Ms. McMahon meet with Ms. Drell and Director of Human Resources, Amy Corsi.

26.     During this meeting, Ms. Corsi stated that no accommodations were possible for Ms. McMahon. Ms. Corsi stated that modified or light duty assignments were reserved for individuals who have been injured on the job. Ms. McMahon was not even given the opportunity to mention what she was asking for as an accommodation.

27.     During the meeting, Ms. Corsi told Ms. McMahon her only option was to take a leave of absence for the remaining duration of her pregnancy.

28.     At the time of this conversation, late June 2019, Ms. McMahon had just entered the second trimester of pregnancy, so taking a leave of absence would equate to an unpaid six month leave of absence (not including any time Ms. McMahon took for maternity leave).

29.     Ms. McMahon's last day of work for FSC was June 26, 2019 as she was forced to go on leave that day.

30.     If she had been allowed by FSC to discuss the accommodation she was requesting, she would have requested an accommodation in the form of not lifting more than 20 pounds, as per

her lifting restriction. Ms. McMahon could have performed all of the essential job functions of her job, even with a 20-pound lifting restriction.

31.     Ms. McMahon rarely had to lift more than 20 pounds as part of her job duties. The only time she lifted more than 20 pounds was when she had a young client, under the age of 3.  For these clients, she would occasionally lift them up as a reward for doing well in treatment.

32.     FSC could have accommodated Ms. McMahon in at least two ways. First, she could have given younger patients other positive reinforcement mechanisms, such as blowing bubbles or running around the facility. Second, she could have been assigned older patients, for whom being picked up was no longer an appropriate positive reinforcement mechanism.

33.     On September 4, 2019, Ms. McMahon had an Unemployment Insurance Appeal Hearing with the Colorado Department of Labor and Employment.

> a.  During this hearing, Ms. McMahon testified that she was able to work so long as her 20-pound lifting restriction was accommodated. Exhibit 1 at 8:27.
>
> b.  At this hearing Ami Corsi, Human Resources Director of FSC also testified under oath that Ms. McMahon was on a leave of absence because of her 20-pound lifting restriction.
>
> c.  Ms. Corsi additionally testified, "it is not our typical practice to provide modified duty for those who are not work injured."  Exhibit 1 at 9:29.

34.     Ms. McMahon was forced to take unpaid leave for the remainder of her pregnancy.

35.     Upon information and belief, Ms. McMahon is not the only pregnant employee who has been denied pregnancy accommodations by Defendant.

36.     Ms. McMahon gave birth to healthy babies on November 29, 2019.

6

37.     After Ms. McMahon gave birth, she experienced severe nausea and vomiting with debilitating chest and back pain.

38.     On February 13, 2020, Ms. McMahon consulted with a surgeon who stated she needed to have her gallbladder removed and an epigastric hernia repaired. These health issues were complications from her pregnancy. Ms. McMahon's doctor placed her back on a 20-pound lifting restriction and scheduled surgery.

39.     On February 19, 220, Ms. Corsi emailed Ms. McMahon asking how her newborn children were doing and what her plans were regarding returning to work.

40.     On February 25, 2020, Ms. McMahon replied and stated she was having some pregnancy related postpartum gallbladder dysfunction, was having surgery the following week, and she was still under a 20-pound lifting restriction. Ms. McMahon stated she could return to work immediately if FSC accommodated her 20-pound lifting restriction.

41.     On February 28, 2020, Ms. Corsi replied via email and asked Ms. McMahon to keep her updated regarding her restrictions. Ms. Corsi stated that light duty was not available for individuals who had not been injured at work.

42.     On March 4, 2020, Ms. McMahon had a cholecystectomy (gallbladder removal) and hernia repair surgery.

43.     Ms. McMahon could have returned to work with no lifting restrictions around late March 2020.

44.     Around March 15, 2020, FSC temporarily closed due to the COVID-19 pandemic. Ms. Corsi emailed Ms. McMahon to inform her that she would not be able to return to work until the center reopened.

45.     On May 22, 2020, Ms. McMahon resigned from employment with FSC.

**FIRST CLAIM FOR RELIEF**
**Sex and Pregnancy Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act of 1978 by**
**Defendant FSC**

46.     Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

47.     Ms. McMahon was a pregnant female and was therefore entitled to the protections of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978.

48.     During her pregnancy, Ms. McMahon was able to perform all essential functions of her job with a reasonable accommodation.

49.     Defendant discriminated against Ms. McMahon due to her pregnancy, refused to even discuss pregnancy accommodations for her pregnancy, and instead forced her into taking unpaid leave for the duration of her pregnancy.

50.     Defendant's adverse action against Ms. McMahon's employment was motivated by Ms. McMahon's sex and pregnancy and was therefore discriminatory in violation of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978.

51.     Defendant's actions complained of herein were intentional and done with malice or with reckless indifference to Ms. McMahon's federally protected rights.

52.     As a result of Defendant's unlawful employment practices, Ms. McMahon's has suffered economic and non-economic damages including, but not limited to, severe emotional distress, mental pain and suffering, inconvenience, and loss of income.

### SECOND CLAIM FOR RELIEF
### Disability Discrimination in Violation of
### Americans with Disabilities Act, 42 U.S.C. § 12111, *et. seq.*
### Defendant FSC

53. Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

54. Ms. McMahon was qualified for her job as evidenced by her successful performance in the job and continued employment for over 3 years.

55. As a result of her high-risk pregnancy, Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act.

56. Plaintiff's high-risk pregnancy substantially limited a variety of major life activities including lifting and carrying items.

57. The Defendant was aware of Plaintiff's disability and Defendant failed to provide her with a reasonable accommodation as required under the Americans with Disabilities Act.

58. Instead of accommodating Plaintiff, Defendant sent Plaintiff home on unpaid leave for the remainder of her pregnancy.

59. As a consequence of Defendant's illegal conduct, Plaintiff suffered significant economic, consequential, and compensatory damages.

60. Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

WHEREFORE, for the reasons stated above, Plaintiff respectfully requests that this Honorable Court enter a judgement for the Plaintiff as follows:

      a. An award of actual damages in amount to be determined at trial, including lost wages, and

9

b.  Non-economic damages for emotional distress, mental pain and suffering, inconvenience, emotional stress, fear, anxiety, embarrassment, humiliation, back pay, and front pay;

c.  An award of exemplary or punitive damages;

d.  An award of reasonable attorneys' fees and costs;

e.  An award of Plaintiff's pre- and post-judgment interest; and

f.  Ordering such and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 23rd day of December, 2020.

By: */s/ Michelle R. Gibson*
Michelle R. Gibson
Rachel E. Ellis
LIVELIHOOD LAW, LLC
3401 Quebec Street, Suite 6009
Denver, CO 80207
mrg@livelihoodlaw.com
ree@livelihoodlaw.com